1

2

3

4

5 UNITED STATES DISTRICT COURT

6 EASTERN DISTRICT OF CALIFORNIA

7
                            )   1:05-cv-0999 OWW LJO

8 RESOURCE LENDERS, INC., a    )
California corporation         )   MEMORANDUM DECISION AND

9                            )   ORDER RE PLAINTIFF'S MOTION
               Plaintiff,   )   FOR A PRELIMINARY

10                            )   INJUNCTION (Doc. 5)
    v.                       )

11                            )
SOURCE SOLUTIONS, INC., a Nevada )

12 corporation,                  )
                           )

13                            )
             Defendant.   )

14                            )
_____ )

15

16

17 **I.   INTRODUCTION**

18

19      Plaintiff RESOURCE LENDERS, INC. ("Plaintiff" or "RESOURCE

20 LENDERS") moves for a preliminary injunction against Defendant

21 SOURCE SOLUTIONS, INC. ("Defendant" or "SSI"), enjoining SSI from

22 using the designations "RESource" or "R.E.Source" or

23 "R.E.*Source" (where the * is a house or other logo), or the

24 introductory word "resource" or any representation of the word

25 "resource" as the introductory word in its business name or

26 service mark, in any manner in connection with the distribution,

27 advertisement, promotion, offer for sale and/or sale of any real

28 estate or mortgage services.  SSI opposes the motion.

1

## II.   **PROCEDURAL HISTORY**

This trademark infringement, unfair trade practices, and dilution action arises out of the complaint of Plaintiff, a real estate mortgage loan provider, that defendant SSI has infringed on Plaintiff's service marks, which are (1) "Resource Lenders" and (2) "Resource Lenders Your Resource For Real Estate Loans." SSI, a real estate sales and mortgage loan company, currently uses the mark "R.E.*Source Redefining Real Estate," (where the * is a logo of a house) and argues that its mark does not infringe on or dilute Plaintiff's mark.  Plaintiff argues that SSI's use of the terms "RESource", "R.E.Source", and/or "R.E.*Source" as the introductory word in its mark does infringe and should be enjoined.

Plaintiff filed its complaint on August 3, 2005.  (Doc. 1, Compl.)  Plaintiff brings six claims against Defendant: (1) Infringement of Federally Registered Service Mark (15 U.S.C. § 1114(1)); (2) Infringement of Service Mark; (3) Trade Name Infringement (Cal. Bus. & Prof. Code § 14330); (4) Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a)); (5) Unfair Competition and Unfair Business Practices (Cal. Bus. & Prof. Code § 17000, et seq., and § 17200); and (6) Dilution (15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14330).  Defendant answered the Complaint on September 6, 2005. (Doc. 18, Answer)

On August 10, 2005, Plaintiff filed a motion for preliminary injunction (Doc. 5, Pl.'s Mot.) and three supporting declarations (Docs. 7, 8, 10).  On September 2, 2005, defendant filed

**2**

1   opposition.  (Doc. 17, Def.'s Opp.)  On September 12, 2005,

2   Plaintiff filed a reply (Doc. 20, Pl.'s Reply) and three

3   supplemental declarations (Docs. 21-23).  Oral argument was heard

4   on September 19, 2005.  Mark D. Miller, Esq., appeared on behalf

5   of Plaintiff.  Sharon Jane Adams, Esq., appeared on behalf of

6   Defendant.  Additional briefing was scheduled to allow Defendant

7   to object to supplemental evidence submitted by Plaintiff and to

8   allow Plaintiff to submit additional evidence of actual

9   confusion.  On September 27, 2005, defendant filed a brief in

10  compliance with the briefing schedule titled "Memorandum of

11  Points and Authorities in Support of Defendant's Response to New

12  Evidence Submitted with Plaintiff's Reply."  (Doc. 30, Def.'s

13  Sur-Reply)  On September 30, 2005, Plaintiff responded, filing a

14  brief titled "Plaintiff's Supplemental Reply Memorandum of Points

15  and Authorities in Support of Motion for Preliminary Injunction."

16  (Doc. 33, Pl.'s Sur-Reply)  Plaintiff also filed twelve

17  supplemental declarations.  (Docs. 34-45)  Defendant replied on

18  October 7, 2005.  (Doc. 47, Def.'s Mem. in Opp.)

19

20                    **II.   <u>BACKGROUND</u>**

21

22      Plaintiff RESOURCE LENDERS is a real estate mortgage and

23  loan services provider headquartered in Fresno, California, with

24  offices in Bakersfield, Visalia, Porterville, Hanford, and San

25  Luis Obispo.  RESOURCE LENDERS alleges it has engaged in

26  extensive advertising and promotion of its real estate mortgage

27  and loan services under the name "Resource Lenders" for the past

28  fifteen (15) years including radio and newspaper advertising,

                              **3**

1   circulating flyers and brochures, and advertising signs,

2   including those posted on the scoreboard at Grizzlies Stadium in

3   Fresno, California.  The parties do not dispute that RESOURCE

4   LENDERS owns two marks:  (1) "Resource Lenders" and (2) "Resource

5   Lenders Your Source for Real Estate Loans."  Defendant SSI opened

6   in 2004.  SSI represents buyers and sellers in real estate

7   transactions and also provides real estate loans.  (Wren Decl. ¶¶

8   2, 3)  SSI asserts that the majority of its business is real

9   estate transactions and not making loans.  (*Id*. at ¶ 4)  The mark

10  currently in use by SSI is "R.E.*Source Redefining Real Estate"

11  (where the * is a logo of a house).  SSI has also used the mark

12  "RESource Real Estate Mortgage," although SSI asserts it no

13  longer uses this mark.

14      In or about January 2005, RESOURCE LENDERS discovered that

15  Defendant SSI had adopted the business name and designation

16  "RESource Real Estate Mortgage" and that SSI was using these

17  names to promote real estate mortgage and loan services in the

18  Fresno area.  (Barnes Decl. ¶ 8)

19      RESOURCE LENDERS sent a first demand letter to SSI on

20  January 28, 2005 to which SSI failed to respond.  (Miller Decl.

21  ¶ 2, Ex. A)  RESOURCE LENDERS made a follow-up telephone call in

22  March 2005, with no response.  RESOURCE LENDERS sent a second

23  letter with a draft unfiled complaint to SSI on March 22, 2005.

24  SSI responded to this letter, and several weeks of discussions

25  and negotiations between the parties regarding SSI's business

26  name followed.  The discussions did not result in any agreement

27  or resolution.  (Barnes Decl. ¶ 8)

28      In its opposition, Defendant asserts that settlement

**4**

discussions broke down because Plaintiff refused to include a "notice and cure" provision in the proposed settlement agreement. Defendant asserts that it began using the designation "R.E.*Source Redefining Real Estate" in response to Plaintiff's complaints and "with the approval of Plaintiff's counsel." (Doc. 17, Def.'s Opp. 2-3; Adams Decl. Ex. A) Defendant denies continuing to use the mark "RESource Real Estate Mortgage," and asserts that current appearances of this mark are merely infrequent and mistaken uses that have not yet been addressed in its transitioning process. (Doc. 17, Def.'s Opp. 2-3) Defendant argues it has taken steps to implement its name change, including ordering new business cards, signs, and filing a new fictitious business statement with the City of Fresno. (*Id.*; Doc. 17, T. Wren Decl., ¶ 5, Ex. A) However, Plaintiff notes that the mark "RESource Real Estate Mortgage" has appeared in the October 2005 issue of *Guide to Better Homes*. (Doc. 34, 09/30/05 Miller Decl. Ex. A) This advertisement lists two real estate agents at the top of the page and lists seven mortgage consultants and/or mortgage consultant/real estate agents at the bottom of the page. An almost identical advertisement appeared in the September 2005 issue of the *Guide*, which Plaintiff attached to its initial moving papers. (Doc. 23, 09/12/05 Miller Decl. Ex. F) Defendant states that it wants all of its agents to use its new mark, and attributes the appearance of this advertisement in the October 2005 issue to "confusion among Defendant's over 250 employees and contractors."

Despite defendant's changing its name to "RESource Redefining Real Estate", however, RESOURCE LENDERS argues that

**5**

defendant's use of the mark "RESource" is nevertheless an infringing use because the term "RESource" is prominently displayed on the new mark, just as it was on the old mark.

RESOURCE LENDERS alleges that SSI uses the infringing marks in the following ways:  (1) portable street signs (MacArthur Decl., Ex. H); (2) SSI maintains fictitious business name statements for "RESOURCE" and "RE-SOURCE" (Miller Decl. ¶ 8, Ex. E); (3) SSI has a mortgage broker's license listing its DBA's as "RESOURCE" and "RE-SOURCE" (*Id*. at ¶ 9, Ex. F); (4) SSI displays the mark on websites, including http://www.resourcerecruit.com; http://www.resourcecorporate.com; and http://www.resourceontheweb.com (*Id*. at Exs. H, I).

### III.   <u>LEGAL STANDARD</u>

Certain prerequisites must be satisfied prior to issuance of a preliminary injunction.  Under the so-called "traditional" standard, an injunction may issue if the court determines that (1) the moving party will suffer irreparable injury if the relief is denied; (2) there is a strong likelihood that the moving party will prevail on the merits at trial; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief.  Under the "alternative" standard, an injunction properly issues when a party demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable injury if relief is not granted; or (2) the existence of serious questions going to the merits combined with a balancing of hardships tipping sharply in favor of the moving

1  party.  The requirement for showing a likelihood of irreparable

2  harm increases or decreases in inverse correlation to the

3  probability of success on the merits, with these factors

4  representing two points on a sliding scale.  *Earth Island*

5  *Institute v. United States Forest Service*, 351 F.3d 1291, 1310

6  (9th Cir. 2003).

7      The bases for injunctive relief (preliminary or permanent)

8  in the federal courts have always been irreparable injury and the

9  inadequacy of legal remedies.  *Weinberger v. Romero-Barcelo*, 456

10 U.S. 305, 312 (1982); *High Sierra Hikers Ass'n v. Blackwell*, 390

11 F.3d 630, 641-42 (9th Cir. 2004); *Ford v. Reynolds*, 316 F.3d 351,

12 355 (2nd Cir. 2003).  Under either the traditional or the

13 reformed approach, to obtain a preliminary injunction, the

14 Plaintiff must show that it is "likely" to prevail on the merits.

15 *Southern Oregon Barter Fair v. Jackson County, Oregon*, 372 F.3d

16 1128, 1136 (9th Cir. 2004).  As part of its balancing of factors,

17 the court weighs the competing claims of injury and considers the

18 effect on each party of the granting or withholding of the

19 requested relief.  *Amoco Prod. Co. v. Village of Gambell, Alaska*,

20 480 U.S. 531 (1987); *Clear Channel Outdoor, Inc. v. City of Los*

21 *Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

22     In determining whether a preliminary injunction is

23 warranted, the Court may consider otherwise inadmissible

24 evidence, such as hearsay.  *See Flynt Distrib. Co., Inc. v.*

25 *Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of

26 obtaining a preliminary injunction necessitates a prompt

27 determination and makes it difficult to obtain affidavits from

28 persons who would be competent to testify at trial.  The trial

**7**

1   court may give even inadmissible evidence some weight, when to do

2   so serves the purpose of preventing irreparable harm before

3   trial."); *Republic of the Philippines v. Marcos*, 862 F.2d 1355,

4   1364 (9th Cir. 1988); *Rosen Entm't Sys., LP v. Eiger Vision*, 343

5   F. Supp. 2d 908, 912 (C.D. Cal. 2004); *Glow Indus., Inc. v.*

6   *Lopez*, 252 F. Supp. 2d 962, 966 n. 1 (C.D. Cal. 2002).

7

8                           III.    **ANALYSIS**

9

10       A.    **Likelihood of Success on the Merits.**

11

12            1.    **Counts I & II:  Infringement of Federally**
                    **Registered Service Mark (15 U.S.C. § 1114(1)) and**
13                  **Common Law Infringement of Service Mark.**

14       Plaintiff's first and second claims for relief are service

15   mark infringement in violation of Title 15, Section 1114(1), of

16   the United States Code, and of common law service mark

17   infringement.  Plaintiff has a federally-registered service mark,

18   "Resource Lenders Your Source for Real Estate Loans" and a common

19   law trademark, "Resource Lenders."

20       Two elements are analyzed to show service mark infringement

21   under either the federal or common law:  (1) existence of a

22   protectable service mark and (2) likelihood of confusion.

23   *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th

24   Cir. 2005) (*citing KP Permanent Make-Up, Inc. v. Lasting*

25   *Impression I, Inc.*, 543 U.S. 111, 548 (2004)).  The first element

26   is not disputed by the parties.  Defendant does not contest

27   Plaintiff's federally-registered service mark "Resource Lenders

28   Your Source for Real Estate Loans" or that it has a common law

                                   **8**

trademark in the term "Resource Lenders."

Defendant argues that there is nevertheless no infringement because there is no likelihood of confusion.  Courts in the Ninth Circuit apply an eight-factor test to determine whether a likelihood of confusion exists:  (1) similarity of the marks; (2) relatedness of the goods or services; (3) common marketing channels; (4) strength of the mark; (5) evidence of actual confusion; (6) type of services and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.  *M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1080 (9th Cir. 2005).  The federal likelihood-of-confusion analysis applies to claims under California law. *Mallard Creek Indus., Inc. v. Morgan*, 56 Cal. App. 4th 426, 434-35 (1997) (citing *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 349 (9th Cir. 1980)).

These factors are not "rigidly" weighed.  *Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).  The court need not establish that each factor weighs in favor of the Plaintiff to establish a likelihood of confusion.  "Some factors are much more helpful than others, and the relative importance of each individual factor will be case specific....  [I]t is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors."  *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2001) (*citing Brookfield Commc'ns*, 174 F.3d at 1054)).  The most important factors are the similarity of the marks, the relatedness of the services, and the use of a common marketing

**9**

1  channel. *CSC Brands LP v. Herdez Corp.*, 191 F. Supp. 2d 1145,

2  1149 (E.D. Cal. 2001) (*citing GoTo.com*, 202 F.3d at 1205;

3  *Dreamwerks Prods.*, 142 F.3d at 1130)).

4

5              **(a)  Similarity of the Marks.**

6      In analyzing the similarity of the marks, they must be

7  considered in their entirety and as they appear in the

8  marketplace. *M2 Software*, 421 F.3d 1073, 1082 (9th Cir. 2005)

9  ("the trademark is not judged by an examination of its parts, but

10  rather 'the validity and distinctiveness of a composite trademark

11  is determined by viewing the trademark as a whole, as it appears

12  in the marketplace.'") (quoting *Official Airline Guides, Inc. v.

13  Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993)).  Similarity is adjudged

14  in terms of appearance, sound, and meaning. *CSC Brands*, 191 F.

15  Supp. 2d at 1149 (citing *GoTo.com*, 202 F.3d at 1206); *M2

16  Software*, 421 F.3d at 1082.  Similarities are weighed more

17  heavily than differences. *CSC Brands*, 191 F. Supp. 2d at 1149.

18      The issue is whether Defendant's marks "RESource Real Estate

19  Mortgage" and "R.E.*Source Redefining Real Estate" are similar to

20  Plaintiff's marks "Resource Lenders" and "Resource Lenders Your

21  Resource for Real Estate Loans."[1]  Plaintiff argues the marks are

22  ────────────

23      [1] Defendant asserts it no longer uses the term "RESource
   Real Estate Mortgage." (Doc. 17, Def.'s Mem. 8)  Plaintiff
24  asserts Defendant does continue to use the phrase "RESource Real
   Estate Mortgage." (Doc. 20, Pl.'s Reply 5)  Plaintiff further
25  argues that the longer phrases are not defendant's mark, and
   instead, defendant's mark is the single word "resource" in all of
26  its forms ("RESource"; "R.E.Source"; and "R.E.*Source"). (Doc.
   33, Pl.'s Sur-Reply 3)  Plaintiff argues that the term "resource"
27  appears in much larger font on defendant's logo than the rest of
   the phrase.  The law is that "marks must be considered in their
28

**10**

similar because of parallels in the appearance, sound, and meaning of the terms.  Defendant disputes this contention.

First, the appearance of the terms is similar in that they all use the term "resource."  Also, the term "resource" is prominent on both.  The letter "R" appears in large, bold lettering on both logos.  The term "resource" is the focal point of each mark, due to both its bold lettering and the fact that it is the introductory word of each term.  However, the letters "E" and "S" also appear in large, bold lettering on SSI's logo, whereas "R" is the only letter on Plaintiff's logo that appears in large, bold font.  Another difference is that Plaintiff's logo has a stylized stack of coins that overlap the stem of the "R", whereas defendant's logo contains a house (represented by a *) that separates the term resource (i.e., "R.E.*Source").

The second and third inquiries are whether the marks are similar in sound and meaning.  When pronounced aloud, defendant's mark "RESource Real Estate Mortgage" does not sound similar to "Resource Lenders" or "Resource Lenders Your Source for Real Estate Loans."  However, these phrases do have a similar meaning, in that both refer to resource in the context of real estate loans or mortgages.  By contrast, defendant's mark "R.E.*Source

_____

entirety and as they appear in the marketplace." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000); *M2 Software*, 421 F.3d at 1082.  Although it is true that the term "resource" appears in bold and large lettering on defendant's mark, it does not follow that defendant's mark is the term "resource" alone.  Defendant's mark will therefore be analyzed as it appears in the marketplace, i.e., "R.E.*Source Redefining Real Estate."

1  Redefining Real Estate" does not contain either the word

2  "mortgage" or the word "loan" and is even less similar in sound

3  and meaning to Plaintiff's marks.[2]

4       Defendant cites case law holding that marks that bear some

5  resemblance to each other were nevertheless found to be

6  dissimilar. *See, e.g., Official Airline Guides*, 6 F.3d at 1393

7  (holding district court did not err in finding mark "OAG TRAVEL

8  PLANNER" was *not* similar in sound and meaning to "THE TRAVEL

9  PLANNER USA" or "USA TRAVEL PLANNER", but that it was similar in

10 sound and meaning to "THE TRAVEL PLANNER"); *Entrepreneur Media,*

11 *Inc. v. Smith*, 279 F.3d 1135, 1145-46 (9th Cir. 2002) (holding

12 that a reasonable juror could find the marks "EntrepreneurPR" and

13 "Entrepreneur" to be dissimilar in sound and meaning, although

14 the terms appear similar at first glance); *Miss World Ltd. v.*

15 *Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988)

16 (holding that, despite some similarities in appearance, sound,

17 and meaning, marks "Mrs. of the World" and "Miss World" were

18 dissimilar), *abrogated in part on other grounds*, *Eclipse Assoc.*

19 *Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1116 n. 1 (9th Cir. 1990)

20 (noting that the court in *Miss World* "misstated the standard of

21 _____

22     [2] Defendant asserts that the marks do not sound similar
   because, when pronouncing the term "RESource," employees of its

23 business say "R [pause] E [pause] source" ("är [pause] ē [pause]
   sōrs") instead of pronouncing the term as it appears in the

24 dictionary ("rē'sōrs"). **cite.** Although the ultimate holding is
   that the marks do not sound similar, this holding is not based on

25 defendant's argument regarding how employees of SSI pronounce the
   term "resource." One does not naturally pronounce the term as

26 defendant pronounces it. Instead the natural pronunciation is
   "rē'sōrs." The punctuation and capitalization used by Defendant

27 do not change this.

28

review" for a district court's finding of likelihood of confusion); *but see See Surfvivor*, 406 F.3d at 633 (holding that similarity factor did not favor either party where disputed marks were "Surfvivor" and "Survivor"); *M2 Software, Inc. v. Madacy*, 421 F.3d 1073, 1083 (9th Cir. 2005) (holding that similarity factor only slightly favored Plaintiff where marks were "M2 Entertainment" and "M2").

However, the law is that similarities of marks are weighed more heavily than their differences. *CSC Brands*, 191 F. Supp. 2d at 1149; *GoTo.com*, 202 F.3d at 1206; *Rodeo Collection*, 812 F.2d at 1219.

The strongest similarity between the marks is the prominence and sound of the term "resource," in relation to home loans. This similarity harms Plaintiff.  The RESource term has differences in visual appearance, sound, and meaning that favor Defendant as to this term.

### **(b)   Relatedness of the Services Provided.**

The next factor is the extent to which the services provided by the parties are related.  "Where the [services] are related or complementary, the danger of confusion is heightened." *M2 Software*, 421 F.3d at 1082.  "The parties' [services] need not be identical or directly competitive...for there to be a likelihood of confusion.  They need only be related in some manner, or the conditions surrounding their marketing be such that they could be encountered by the same purchaser under circumstances that could give rise to the mistaken belief that the goods come from a common source." *Moose Creek, Inc. v.*

**13**

*Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1226 (C.D. Cal. 2004).

Plaintiff's sole business is providing real estate loans. Defendant's primary business is real estate sales, but it also provides real estate loans.  The parties' customer base is the same.  While the parties' businesses are similar, they are not identical, as Plaintiff contends.  Both parties provide real estate mortgages and serve the same customer base.  This factor weighs in favor of a finding of likelihood of confusion.

### (c)   Use of Common Marketing Channel.

"Convergent marketing channels increase the likelihood of confusion."  *M2 Software*, 421 F.3d at 1083 (quoting *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987)).  Plaintiff argues that it uses the same primary marketing channel as Defendant, i.e., the print media.  (Doc. 20, Pl.'s Reply 7)  Plaintiff attaches one of Defendant's advertisements in a local magazine, *Guide to Better Homes*.  (Doc. 34, Miller Supp. Decl., Ex. F)  Plaintiff does not have an advertisement in this magazine, but does advertise in what it characterizes as "competing publications," including *The Real Estate Book* magazine, *Real Estate Showcase*, and *The Fresno Bee*.  (Doc. 34, Miller Supp. Decl. Exs. G-I)

Plaintiff also uses the internet to advertise.  Defendant concedes it owns websites, but denies that it uses the websites to advertise.  (Doc. 17, Def.'s Mem. 9)  Instead, Defendant uses the websites to recruit and hire employees.  (*Id.* (citing Wren Decl. ¶ 13))  Defendant also contends that customers cannot find

**14**

1   its website through search engines, and can only find the website

2   by previously knowing the URL and typing it into an internet web

3   browser.   However, Plaintiff asserts that Defendant's business

4   cards direct users to the defendant's website.   (Doc. 20, Pl.'s

5   Reply 7).

6       Based upon the parties' submissions, the primary channel of

7   marketing is the print media.   This factor weighs in favor of a

8   finding of likelihood of confusion.

9

10                  **(d)   Strength of the Mark**.

11       In the Ninth Circuit, the strength of a mark is measured

12  depending upon how distinctive the mark is.   *Surfvivor Media*, 406

13  F.3d at 631; *M2 Software*, 421 F.3d at 1080.   The more descriptive

14  the mark, the weaker it is.   *Id*.   Marks are classified as

15  generic, descriptive, suggestive, or arbitrary.   *Id*.   An

16  arbitrary or fanciful mark is the most distinctive.   *Id*.   If a

17  mark is more descriptive, then the moving party must establish

18  that a greater degree of secondary meaning has attached to the

19  mark as the result of commercial success.   *M2 Software*, 421 F.3d

20  at 1081 ("Our court has previously recognized that a suggestive

21  or descriptive mark, which is conceptually weak, can have its

22  overall strength as a mark bolstered by its commercial success.")

23  (citing cases).

24       Plaintiff argues that its marks are arbitrary and that they

25  are entitled to the highest degree of protection.   In the

26  alternative, Plaintiff argues that this factor weighs in its

27  favor because its marks have acquired secondary meaning within

28  its market.

                                **15**

Here, Plaintiffs' mark "Resource Lenders" is suggestive. Although it does not necessarily evoke the meaning, real estate loans, the term "lenders" does evoke loans. Plaintiff's mark "Resource Lenders Your Source for Real Estate Loans" is descriptive, since it describes the services offered by Plaintiff's company. Plaintiffs' marks are relatively weak. Plaintiff must establish some secondary meaning in order for this factor to weigh in its favor.[3]

Secondary meaning is "the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product [or service]." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). In determining whether secondary meaning has attached, the following factors are considered: "(1) whether

---

[3] Defendant argues that Plaintiff's marks are weak because "resource" is used widely in the real estate field. Specifically, Defendant argues that Plaintiff's mark is conceptually weak based on a "crowded field" theory, which holds that a mark, even if not necessarily descriptive, is nevertheless weak due to its existence in a market of similar marks. *Miss World*, 856 F.3d at 1449 ("In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other."). In support of its argument, defendant cites the Department of Real Estate's list of licenses (92 companies with the term "resource"); California Secretary of State's corporate/LP/LLP listings (8 companies using the term "resource" and "real estate" in their title); and the U.S. Patent & Trademark Office (six pending or issued trademarks use the combination of "resource" and "real estate"). (Doc 17, Def.'s Opp. 6)

Defendant has produced no evidence that the term "resource" is widely used in the real estate field in the Central Valley of California. Even if defendant had produced such evidence, it would not necessarily overcome Plaintiff's showing that its marks have obtained secondary meaning in the Central Valley.

actual purchasers of the product [or service] bearing the claimed

trademark associate the trademark with the producer [or service

provider], (2) the degree and manner of advertising under the

claimed trademark, (3) the length and manner of use of the

claimed trademark, and (4) whether use of the claimed trademark

has been exclusive."  *Yellow Cab Co. of Sacramento v. Yellow Cab*

*of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005) (*quoting*

*Levi Strauss*, 778 F.2d at 1354).

Plaintiff has submitted evidence regarding all four of these

factors to support its contention that its marks have acquired

secondary meaning in its market, the Central Valley of

California.  First, Plaintiff has submitted evidence that its

mark is associated with its company, specifically nine

declarations of various real estate agents, employees of title

companies, appraisers, and customers who work or live in the

Central Valley.[4]  (Docs. 36-45)  These individuals all testify in

their declarations that "[w]henever anyone makes reference to

'Resource' or 'Resource Lenders' I immediately think of

[Plaintiff's] business."  In addition to these declarations,

Plaintiff has also submitted evidence of a survey conducted by

Media Specialists, a marketing survey company.  (Doc. 35, Walker

Decl.)  Four hundred three (403) respondents were telephoned from

---

[4] **David Spurlock (real estate appraiser); Joyce Simas (real estate agent); Anthony Gamber (real estate agent); Paul Parano (real estate agent); Don Fulmer (tools distributor); Marnie Gotfried (recent real estate refinancing customer); Mark Crawford (insurance agent); Sandy Richardson (recent Resource Lenders customer); Teddi Peters (Madera real estate agent); Mark Barsotti (title company employee).**

1   Friday, September 23, 2005, through Monday, September 26, 2005.

2   (*Id.* at ¶ 3)  Of the respondents who had obtained a home loan in

3   the last 5 years, 40.21% were familiar with RESOURCE LENDERS.

4   The recognition score of a competitor (Royal Charter) among the

5   same group was 14.43%.  (Id. at ¶ 9)  Of all the respondents,

6   23.57% recognized RESOURCE LENDERS' name.  (*Id.* at ¶ 6)

7       Defendant objects that the declarants' association of the

8   word "resource" with Plaintiff's business is irrelevant.

9   Defendant argues that "the only issue before the [c]ourt is

10  whether Defendant's mark is confusingly similar in sight, sound,

11  and meaning to the marks Plaintiff has actually used in commerce:

12  'Resource Lenders' and 'Resource Lenders Your Resource For Real

13  Estate Loans.'" Defendant does not otherwise object to the

14  affidavits.  Defendant's objection is misplaced as a confusion

15  survey or secondary meaning (identification) is a classic method

16  of proving public identification of a claimant with the contested

17  trade name.

18      Second and third, Plaintiff has submitted the declaration of

19  the president of RESOURCE LENDERS regarding the amount of

20  advertising using the mark and the length of time Plaintiff has

21  used the mark in advertising.  (Doc. 8, Barnes Decl. ¶ 7)

22  Specifically, RESOURCE LENDERS has engaged in advertising and

23  promotion of its services under the name "Resource Lenders" for

24  the past 15 years, including ads in newspapers, on the radio, and

25  on signs, including the scoreboard at Grizzlies Stadium in

26  Fresno.  Additionally, the advertising expenditures for RESOURCE

27  LENDERS over the past three years have averaged just over

28  $100,000 per year.  Fourth and finally, there is no evidence that

**18**

any other real estate mortgage company has used a mark beginning with the term "resource" in the Central Valley of California.

Plaintiff has submitted sufficient evidence to show a likelihood of success in establishing that its mark, RESOURCE LENDERS, has acquired secondary meaning in its market, the Central Valley of California.  This factor weighs in favor of Plaintiff.

### (e)   Evidence of Actual Confusion.

Plaintiff provides two examples of actual confusion in its reply.  One was a phone call to RESOURCE LENDERS from a man who wanted to speak to a specific real estate agent.  RESOURCE LENDERS' clerk informed the caller that RESOURCE LENDERS did not have any real estate agents--only loan officers.  The caller then said, "Aren't you Resource?"  The caller then asked whether the office he called was still located near Shaw Avenue and Sixth Street, in Fresno.  (Olander Decl. ¶ 2)  The other example Plaintiffs provide is another phone call from a woman who asked whether the office was located on Shaw Avenue near the Old Spaghetti Factory.  Defendant's former office was located on Sixth Street near Shaw.[5]

Plaintiff correctly notes that evidence of actual confusion is not determinative in actions seeking injunctions for service mark infringement such as this one.  *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1219 (9th Cir. 1987); *see also Cohn*

--------

[5] Plaintiff concedes that the first caller was looking for a real estate agent, which is a service provided by Defendant but not by Plaintiff.

1   *v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002) ("Because
2   evidence of actual confusion can be difficult to obtain, its
3   absence is 'generally unnoteworthy' and is given little probative
4   weight." (quoting *Brookfield Commc'ns*, 174 F.3d at 1050)).

5       However, evidence of actual confusion is a useful factor and
6   is not entirely disregarded by courts in their analyses.
7   *Surfvivor Media*, 406 F.3d at 633 (scant evidence of actual
8   confusion weighted against Plaintiff seeking to establish
9   likelihood of confusion); *Glow Indus. Inc. v. Lopez*, 273 F. Supp.
10  2d 1095, 1124-25 (C.D. Cal. 2003) (noting that while evidence of
11  actual confusion is not necessary to prevail on an infringement
12  claim, lack of any such evidence weighed against finding of
13  likelihood of confusion).

14      Defendant argues that the phone calls are not evidence of
15  actual confusion because the callers were looking for defendant's
16  business and not for Plaintiff's business.  As Plaintiff argues,
17  however, confusion is confusion, and that it is irrelevant that
18  the callers were looking for defendant's business.  That the
19  callers mistakenly placed a call to the business they were not in
20  fact looking for is evidence of actual confusion.

21      The two phone calls are the only evidence of actual
22  confusion that Plaintiff submitted.  This factor weighs only
23  slightly in favor of a finding of likelihood of confusion.

24

25              **(f)   Type of Service Provided & Degree of Care
26                      Exercised by Consumers.**

27      The service provided by Plaintiff is arranging real estate
28  loans.  The services provided by Defendant are conducting real

1  estate sales and providing real estate loans.  In evaluating the

2  type of service provided, an important factor is the degree of

3  care likely to be exercised by an individual seeking a real

4  estate loan in choosing a loan provider.  In analyzing this

5  issue, courts ask what is expected of a reasonably prudent

6  consumer, who:

> is more discerning--and less easily confused-
> -when he is purchasing expensive items, *see,*
> *e.g., Official Airline Guides*, 6 F.3d at 1393
> (noting that confusion was unlikely among
> advertisers when the products in question
> cost from $2,400 to $16,000), and when the
> products being sold are marketed primarily to
> expert buyers, *see, e.g., Accuride Int'l,*
> *Inc. v. Accuride Corp.*, 871 F.2d 1531, 1537
> (9th Cir. 1989). ...  On the other hand, when
> dealing with inexpensive products, customers
> are likely to exercise less care, thus making
> confusion more likely.  *See, e.g., Gallo*, 967
> F.2d at 1293 (wine and cheese).

15  *Brookfield Commc'ns*, 174 F.3d at 1060.

16  Most real estate loans involve a large investment, causing a

17  reasonably prudent consumer to be more discerning in choosing a

18  mortgage loan provider, making confusion is less likely.  *See*

19  *id.; see also Franklin First*, 356 F. Supp. 2d at 1052 (relying on

20  party's declaration that "Mortgage loans often exceed $100,000;

21  for many people, a home-mortgage loan is the single most

22  important expenditure of their lives.")

23  Plaintiff argues that mortgage loan seekers are not likely

24  to do more than internet and phone shopping before choosing a

25  mortgage loan provider and that this factor therefore tips in

26  favor of a finding of likelihood of confusion.  Plaintiff notes

27  that a verbal referral to Plaintiff as "resource" could result in

28  a call to defendant.  Defendant argues first that it does not use

21

keywords for its websites, so a customer could not find its business in an internet search.  Plaintiff's arguments based on the internet are therefore not persuasive.  Second, defendant argues the names of defendant and Plaintiff's companies are not found near each other in the phone book, where defendant is listed under "R.E." and Plaintiff is listed under "Resource."

Plaintiff provides no evidence regarding how customers go about choosing a mortgage loan provider.  Although the court in *Franklin First* found that the degree of customer care was high, it relied on evidence submitted by the parties.  Here, there is no such evidence.  Plaintiff has produced evidence that its mark has secondary meaning and is recognized by customers and potential customers in the Central Valley of California, which is circumstantial evidence supporting Plaintiff's argument that a verbal reference to "Resource" will result in a call to defendant.  This factor slightly favors a finding of likelihood of confusion.

### (g)   Defendant's Intent in Selecting the Mark.

"It is settled that '[a] party claiming trademark infringement need not demonstrate that the alleged infringer intended to deceive consumers'" *M2 Software*, 421 F.3d at 1085 (quoting *E. & J. Gallo*, 967 F.2d at 1293)).  However, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, [it is] presume[d] that the public will be deceived." *Id*. (citing *Sleekcraft*, 599 F.2d at 354); *see also Interstellar Starship Svcs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1111 (9th Cir. 1999) ("Adopting a designation with knowledge of its trademark

status permits a presumption of intent to deceive.").  The intent
factor is relevant to the extent it bears upon the likelihood
that consumers will be confused.  *Brookfield Commc'ns*, 174 F.3d
at 1059.  If there is little or no likelihood of confusion, then
the intent cannot be inferred.  *Id*.

Plaintiff argues, without citing any evidence or legal
authority, that Defendant's intent to confuse or infringe in
choosing a mark with the term "resource" can be inferred based on
speculation that a call to directory assistance seeking a real
estate loan company named "Resource" might mistakenly be directed
to Defendant instead of Plaintiff.  Plaintiff also argues that a
word-of-mouth referral to a real estate loan provider named
"Resource" could similarly misdirect a customer to Defendant
instead of Plaintiff.

Defendant denies that it knew about Plaintiff's mark before
it chose its name. (Doc. 17, Def.'s Opp. 10)  Defendant's
company is named Source Solutions, and Defendant asserts that it
initially chose the name RESource Real Estate Mortgage to
represent it as the "Source for Real Estate Homes and Loans."
(Doc. 17, J.C. Wren Decl. ¶ 2; T. Wren Decl. ¶ 4)  Plaintiff
argues that Defendant's use of the name "Resource" is
nevertheless "suspect," basing its argument on the declaration of
Tara Wren, an officer of SSI, who stated that when she filed
SSI's original fictitious business statement and a statement with
the California Department of Real Estate, she understood that SSI
was not allowed to have a d/b/a that was the same as another
company's.  Ms. Wren filed SSI's d/b/as as "Re-Source" and
"Resource."

23

1    Plaintiff has not provided evidence that defendant knew of

2    its existence before Defendant adopted its name.  This factor

3    does not weigh in Plaintiff's favor.

4

5              **(h)   Likelihood of Expansion of the Product Lines.**

6        For the likelihood of expansion factor to weigh in favor of

7    the service mark holder, it must show that the "existence of the

8    allegedly infringing mark is hindering the Plaintiff's expansion

9    plans."  *Surfvivor Media*, 406 F.3d at 634.  This factor weighs in

10   favor of the service mark holder if there is a "*strong*

11   possibility of expansion into competing markets."  *M2 Software*,

12   421 F.3d at 1085 (quoting *E. & J. Gallo*, 967 F.2d at 1293)

13   (emphasis added).  However, where the parties compete closely,

14   both geographically and in the same services offered, the

15   likelihood of expansion "is relatively unimportant."  *Petsmart*,

16   281 F.3d at 843 (citing *Brookfield Commc'ns*, 174 F.3d at 1060).

17       Plaintiff argues that both its business and defendant's

18   business are growing.  Plaintiff states that, since its business

19   opened 15 years ago, it has expanded beyond Fresno to

20   Bakersfield, Visalia, Porterville, Hanford, and San Luis Obispo.

21   Plaintiff also notes that one of SSI's officers stated his

22   declaration that its business is "rapidly growing" and that it

23   has a website set up for recruiting.  (Doc. 17, J.C. Wren ¶ 13)

24       Plaintiff's self-identified market is the Central Valley of

25   California.  Plaintiff offers no evidence that there is a strong

26   possibility of expansion to markets outside the Central Valley.

27   This factor does not weigh in favor of Plaintiff.

28

**24**

**(i)   Conclusion.**

Plaintiff's evidence establishes that likelihood of confusion exists between Defendant's use of the terms RESource or R.E.*Source in connection with the real estate lending business. The term "R.E.*Source Redefining Real Estate," is less similar to Plaintiff's marks, but "Resource Lenders" and "Resource Lenders Your Resource For Real Estate Loans" are deserving of protection by way of injunctive relief.

**2.   Trade Name Infringement (Cal. Bus. & Prof. Code § 14330).**

"Trademarks (i.e., symbols used to identify and distinguish goods or services) and trade names (i.e., symbols used to distinguish companies, partnerships and businesses) are technically distinct; the major legal distinction between the two is that 'trade names cannot be registered and are therefore not protected under 15 U.S.C. § 1114.'" *First Franklin*, 356 F. Supp. 2d at 1050 (quoting *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F. 2d 1531, 1534-35 (9th Cir. 1989)).  Under California law, there is a rebuttable presumption that, upon filing articles of incorporation, the corporation has the "exclusive right to use the name set forth in the articles or certificate as well as any confusingly similar name." *Mallard Creek Indus., Inc. v. Morgan*, 56 Cal. App. 4th 426, 433 (1997); *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 289 (C.D. Cal. 1992) (citing *American Petrofina, Inc. v. Petrofina of California, Inc.*, 596 F.2d 896 (9th Cir. 1979)).

Plaintiff's name, as set forth in the articles of

25

incorporation, which Plaintiff filed with the California Secretary of State in 1990, is "Resource Lenders." Plaintiff does not allege that Defendant is using this name. The use of the term "Resource" for Defendant's real estate loan business is confusing. Plaintiff has established a likelihood of success on its trade name infringement claim.

### 3.    Dilution (15 U.S.C. § 1125(c); Cal. Bus. & Prof. Code § 14330).

Injunctive relief is available under the Federal Trademark Dilution Act if a Plaintiff can establish that (1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the Plaintiff's mark became famous; and (4) there is actual harm to the trademark holder. *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1010 (9th Cir. 2004). In addition, the Plaintiff must initially show that the defendant's mark is identical or nearly identical. *Id*. at 1011; *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002). The analysis for California state law dilution is the same as that for a federal dilution claim. *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998). Likelihood of confusion is not an element of dilution. *Nissan Motor*, 378 F.3d at 1011 ("Dilution is 'the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception.") (quoting 15 U.S.C. § 1127); *Thane*, 305 F.3d at 904.

**26**

1    Defendant argues that Plaintiff is not entitled to
2    injunctive relief because Plaintiff cannot establish a likelihood
3    of success on its dilution claim.  Specifically, defendant argues
4    that defendant's mark is not identical to Plaintiff's, that
5    Plaintiff's mark is not famous, and that Plaintiff cannot show
6    actual dilution of its mark.

7    First, Plaintiff argues that its marks "Resource Lenders
8    Your Source for Real Estate Loans" and "Resource Lenders" are
9    identical to Defendant's marks using the term "resource,"
10   including "R.E.Source," "R.E.Source Redefining Real Estate," and
11   "R.E.*Source."  In the Ninth Circuit, courts use the "identical
12   or nearly identical" standard.  *Thane*, 305 F.3d at 907.  Under
13   this standard, marks are considered "identical" in a dilution
14   analysis where they are "similar enough that a significant
15   segment of the target group of customers sees the two marks as
16   essentially the same."  *Thane*, 305 F.3d at 906 (internal
17   quotations and citations omitted).  In *Thane*, the court found
18   that a reasonable fact-finder could conclude TREK and OrbiTREK
19   marks are nearly identical.  *Id.* at 907.

20   Although both the Plaintiff's marks and the Defendant's mark
21   feature the word "resource" prominently, the word is presented
22   differently in the respective marks, and is succeeded by
23   different words.  The marks are not identical or nearly
24   identical.

25   Second, Plaintiff argues that its mark is famous within a
26   niche market as defined by the Ninth Circuit in *Thane*.  *Thane*,
27   305 F.3d at 908 ("[M]arks famous in only a limited geographic
28   area or a specialized market segment can be found 'famous' for

the purposes of the federal anti-dilution statute.") (quoting *Avery Dennison*, 189 F.3d at 877).  Niche fame protection is limited to the extent that the alleged diluter uses the mark within the niche.  *Id*.  There is no dispute that Defendant uses the allegedly infringing marks within the niche market of the Fresno and Central Valley area.  Defendant does dispute that Plaintiff's mark is famous, and argues that Plaintiff has also failed to establish a likelihood of success on its dilution claim for this reason.

The federal anti-dilution statute provides eight factors for courts to consider in determining whether a mark is famous:

> (A)  the degree of inherent or acquired distinctiveness of the mark;
>
> (B)  the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
>
> (C)  the duration and extent of advertising and publicity of the mark;
>
> (D)  the geographical extent of the trading area in which the mark is used;
>
> (E)  the channels of trade for the goods or services with which the mark is used;
>
> (F)  the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
>
> (G)  the nature and extent of use of the same or similar marks by third parties; and
>
> (H)  whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

15 U.S.C. § 1125(c)(1).  Plaintiff argues that its marks are famous under these factors because it used them in advertising

28

for the past fifteen years in the Fresno and Central Valley area. Plaintiff argues that its marks have acquired and inherent distinctiveness.  Defendant disputes Plaintiff's contentions, and argues that Plaintiff's marks are neither distinctive nor famous because many other real estate businesses in the Central Valley use the term "resource" in their names.

Dilution usually protects marks such as "KODAK," "Buick," and "Coca-Cola" that are well-known to the general public to the point of being "household names." *See Thane*, 305 F.3d at 906; *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) ("Dilution is a cause of action invented and reserved for a select class of marks--those marks with such powerful consumer associations that even non-competing uses can impinge on their value.").  The only evidence Plaintiff has submitted of the famousness of its mark is the limited survey evidence, which showed that about 40% of a sample of persons in the Central Valley home loan market were familiar with Resource Lenders. Even if Central Valley home loan purchasers meet the requirements of a niche market as defined in *Thane*, recognition by 40% of a niche market is not sufficient to establish the degree of famousness and recognition required for a dilution claim.  *Avery Dennison*, 189 F.3d at 875 ("to meet the 'famousness' element of protection under the dilution statutes, a mark must be truly prominent and renowned." (internal quotation and citation omitted.)).  Although Plaintiff has submitted some evidence in support of a few of the famousness elements, Plaintiff has failed to produce evidence that shows a likelihood of success in establishing the famousness element of its dilution claim.

1   Plaintiff has not established a likelihood of success on the

2   merits of its dilution claim.

3

4       **4.    Unfair Competition and Unfair Business Practices;**
            **False Designation of Origin (Cal. Bus. & Prof.**
5           **Code § 17000, *et seq*., § 17200; 15 U.S.C.**
            **§ 1125(a)).**
6

7   A claim for unfair competition under Cal. Bus. & Prof. Code

8   § 17200 and false designation of origin under § 1125(a)(1)(A) are

9   analyzed in the same manner as a claim for trademark

10  infringement.  *M2 Software*, 421 F.3d at 1080, n. 5.  The test for

11  unfair competition and false designation of origin is the same as

12  for trademark infringement, i.e., likelihood of confusion.  *Id*.;

13  Thane, 305 F.3d at 901 n. 3.

14  The court has found that a likelihood of confusion exists

15  between the Plaintiff's and Defendant's marks.  The Plaintiff is

16  therefore likely to prevail on the merits of its Unfair

17  Competition and Unfair Business Practices and False Designation

18  of Origin claims.

19      **B.    Irreparable Harm to Plaintiff; Balance of Hardships;**
            **Service to Public Interest.**
20

21  In trademark infringement and unfair competition cases, once

22  likelihood of confusion is established, it is usually presumed

23  that the Plaintiff will suffer irreparable harm and that the

24  balance of hardships tips in Plaintiff's favor.  *Vision Sports,*

25  *Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir. 1989);

26  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1209 (9th Cir.

27  2000) (because Plaintiff succeeded in establishing likelihood of

28  confusion, court "need not decide whether there exist serious

**30**

questions on the merits or whether the balance of hardships tips sharply in favor of Plaintiff").

Plaintiff argues that the balance of hardships tips in its favor.  Plaintiff argues that SSI continues to use the term "resource" in new advertising, and cites as an example the appearance of "R.E.*Source Real Estate Mortgage" in the September and October 2005 editions of *Guide to Better Homes, The Central Valley's Real Estate Publication*.  (Doc. 20, Pl.'s Reply 8; Doc. 33, Pl.'s Sur-Reply).  Plaintiff contends these are not "holdover uses" or "infrequent and mistaken uses" as SSI claims.  Defendant argues that it will be harmed by an injunction because changing its name once again will cause disruption to its business. Plaintiff argues that changes such as modifying business cards, letterhead, and telephone directory listings are minor costs.

"It is well established that trademark law protects not only the private interests of the trademark owner but also the public's interest in not being confused by the infringing products." *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004) (citing *Inwood Labs., Inc. v. Ives Labs. Inc.*, 456 U.S. 844, 854 n. 14 (1982)).  In trademark infringement cases, the public interest is served when an injunction would protect the "right of the public not to be deceived or confused." *Id.* (quoting *Opticians Ass'n of Amer. v. Indep. Opticians of Amer.*, 920 F.2d 187, 197 (3d Cir. 1990)).

Here, because a likelihood of confusion was demonstrated, the public interest would be served by issuance of an injunction.

**IV.   <u>CONCLUSION</u>**

1    Plaintiff's motion for preliminary injunction is GRANTED

2  against Defendant's use of the terms "Resource," "RESource," or

3  "R.E.*Source" for any advertising or commercial use of that term

4  in connection with the real estate loan business.   Plaintiff

5  shall submit a form of preliminary injunction within three (3)

6  days of service of this order.

7

8

9

10

11  **SO ORDERED.**
    **DATED: December _12__, 2005.**
12

13                              **/s/ OLIVER W. WANGER**

14                           _____

15                                 **Oliver W. Wanger**
                           **UNITED STATES DISTRICT JUDGE**
16

17

18

19

20

21

22

23

24

25

26

27

28